IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:13cr164 |
| | ) | |
| SIERRA DANYELLE HALSEY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**</u>

The United States of America, by Dana J. Boente, United States Attorney, and Elizabeth M. Yusi, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. §3553(a).   The government has no objection to the content of the Presentence Investigation Report (PSR).   According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 600[1] (restricted) months' imprisonment.   Based on the heinous nature of the offense, the obstruction of justice, the defendant's history and characteristics and related conduct, the United States asks the Court to impose a guideline sentence of imprisonment of at least 216 months' imprisonment and lifetime supervised release.   In support of its position, the government states as follows:

## I.  BACKGROUND

On May 5, 2014, defendant SIERRA DANYELLE HALSEY pleaded guilty to one count of Production of Child Pornography, in violation of 18 U.S.C. § 1591, and one count of

---

[1]   According to the PSR, the high end of the Guidelines range is restricted to 600 months because the statutory maximum sentence defendant can receive is 50 years imprisonment.   If the Guidelines range exceeds the statutory maximum for one count, and defendant is convicted of multiple counts, the Guidelines allow the Court to "stack" multiple counts consecutively to achieve a sentence within the Guidelines range.   U.S.S.G. § 5G1.2; *see also United States v. Allen*, 491 F.3d 178, 195 (4th Cir. 2007).

Destruction of Records, in violation of 18 U.S.C. § 1519.[2]   Defendant's sentencing hearing is

scheduled for August 18, 2014, before this Honorable Court.   While the government has filed a

motion for a downward departure based on HALSEY's cooperation and under 18 U.S.C. § 3553(e)

allowing the Court to go below the fifteen year mandatory minimum, the government maintains

that a sentence of at least 216 months' imprisonment is reasonable and appropriate given the

serious facts, history and circumstances underlying the instant case and particular defendant.

The investigation that led law enforcement to HALSEY began on July 25, 2013, when the

Chesapeake Police Department (CPD) received information that Kanealeen Latouche may have

been involved with the production of child pornography involving two toddlers, Jane Doe 4 and

John Doe 3, who were approximately 2 and 3 years old, respectively.   The received information

indicated that Latouche created sexually explicit videos at the behest of an unknown male

individual that Latouche had met online.

On July 26, 2013, CPD Detectives and a Special Agent with Homeland Security

Investigations (HSI) located Kanealeen Latouche's husband and asked to speak with him

regarding his wife's e-mail account.   The husband agreed to speak with the investigators and

made statements regarding the videos he had viewed in her e-mail.   The husband stated a few

weeks prior he had been going through his wife's phone and saw an e-mail to a guy named "Mike

Pyro" that she had been communicating with online.   The husband stated when he opened a

couple of the e-mails he saw videos of Jane Doe 4 and John Doe 3 along with Latouche engaged in

sexually explicit conduct.   The husband stated there were four to five videos attached to the

---

[2]   A violation of 18 U.S.C. § 2251 carries a mandatory minimum of fifteen years'
imprisonment and a maximum penalty of 30 years' imprisonment.   A violation of 18 U.S.C.
§ 1519 carries a maximum penalty of 20 years' imprisonment.

e-mails.   The husband stated he forwarded the e-mails to his own e-mail account, and they were

still in his account.   The husband granted written consent for the agents to access his e-mail

account to retrieve the forwarded e-mails.   The husband also granted written consent for the

agents to take his laptop computer for a forensic examination as Latouche used it to backup and

synch her iPhone to the iTunes account.

On July 26, 2013, CPD Detective Justice accessed the husband's e-mail account and

recovered the e-mails containing the videos of Kanealeen Latouche, Jane Doe 4 and John Doe 3

engaged in sexually explicit conduct.   CPD Detectives and HSI then located Latouche at her

residence and asked to speak with her about her e-mail account.   Latouche agreed to speak with

the agents.   Latouche was administered her *Miranda* Warnings both verbally and in writing and

was interviewed in the CPD Detective's vehicle for privacy.   She immediately knew why the

investigators wanted to talk to her about her e-mail account, and further stated that it had to do with

videos she had made of her and Jane Doe 4 and John Doe 3 engaged in sexually explicit conduct.

Latouche stated she made the videos at the request of an individual named "Mike Pyro" that she

had been texting who offered to pay her $15,000 for them, in addition to a couple of other

activities.   She stated that she texted Mike Pyro on his cell phone and e-mailed with him.

Latouche stated initially she was only trying to make some money by prostituting herself

for Mike Pyro.   Mike Pyro told her she would be paid $6,000 for a "party" which would have

included sex.   Latouche stated that arrangements for the party kept getting pushed back and never

occurred.   The text conversations with Mike Pyro eventually escalated to engaging in sex acts

with Jane Doe 4 and John Doe 3 for money.   Latouche stated after she made the videos with Jane

Doe 4 and John Doe 3 and sent them to him, Mike Pyro said she then had to show up at a hotel with

Jane Doe 4 to engage in sexually explicit conduct with Mike Pyro.   At the conclusion of the

interview, Latouche granted written consent for the investigators to access her e-mail account and examine her two iPhones.

Law enforcement examined the iPhones and recovered text message exchanges between Latouche and Mike Pyro whereby Mike Pyro persuades Latouche to create the child pornography videos.   Mike Pyro makes the proposal that if she does certain sexual conduct with the children, videotapes the conduct, and sends it to him, the children will not have to come to the hotel party. Latouche makes several videos and sends them to Mike Pyro via their e-mail accounts.   In subsequent text chats, Mike Pyro continues to attempt to get Latouche to bring Jane Doe 4 and John Doe 3 to a hotel room and she declines.   Mike Pyro eventually threatens to release to videos if she doesn't meet him or pay him money.   Neither occurred.

Between July 26, 2013 and September 2013, HSI issued numerous Customs Summonses to various e-mail, cell phone app providers, and ISP providers to determine the identity of "Mike Pyro."   "Mike Pyro" was ultimately determined to be Robert Harold Scott, Jr. of Virginia Beach, Virginia.   HSI issued a Federal Search Warrant to Google Inc., for the contents of Scott's e-mail account.   On September 20, 2013, Google responded to the search warrant and provided the contents of the account.   A review of the contents revealed thousands of communications between Scott and other females that were attempting to participate in prostitution-related sex parties for Scott.

One of the persons that communicated with Scott utilized the e-mail address "1sweetheart09@gmail.com."   The name associated with the e-mail account was "Sierra Halsey."   Law enforcement identified the user of "1sweetheart09@gmail.com" as defendant SIERRA DANYELLE HALSEY.

4

A review of the communications between Scott and the e-mail address "1sweetheart09@gmail.com," revealed numerous videos of defendant HALSEY engaged in sexually explicit activity with two minor males, John Doe 1 (5 years old) and John Doe 2 (1 years old).   The e-mail communications between "1sweetheart09@gmail. com" and Scott were between April 11, 2013 and April 21, 2013.   The videos of HALSEY, John Doe 1 and John Doe 2, were taken and sent to Scott on several occasions between April 11, 2013, and April 21, 2013. Examples of the videos are described as:

      a.      "VID_20130421_104522_6197.mp4" was e-mailed to pyro75747@gmail.com on April 21, 2013.   The video depicts John Doe 2 naked, lying on his back on a bed.   HALSEY performs oral sex on John Doe 2 while engaged in sexual intercourse with, as identified by HALSEY, Robert Scott at the same time.

      b.      "VID_20130419_214530_9896.mp4" was e-mailed to pyro75747@gmail.com on April 19, 2013.   The video depicts John Doe 2 lying on his back on the bathroom floor.   He is naked from the waist down and HALSEY performs oral sex on him.

      c.      "VID_20130418_081941_8077.mp4" was e-mailed to pyro75747@gmail.com on April 18, 2013.   The video depicts John Doe 1 running around the bed naked.   HALSEY is also lying on the bed naked and masturbating in front of John Doe 1.   John Doe 1 climbs on the bed and shows his penis to the camera.   John Doe 1 also appears to kiss or lick the vaginal area of HALSEY.

HALSEY sexually abused the minors on several different occasions.   For John Doe 1, HALSEY produced images on at least three different days of the boy.   For John Doe 2, HALSEY produced sexually explicit images of him on at least two different days.   HALSEY also brought

John Doe 2 to a hotel and, with Scott, engaged in oral sex with the 1 year old while engaging in sexual intercourse with Scott and while Scott produced a video of the interaction.

The investigation also revealed that HALSEY began a romantic relationship with Scott after she met him through "Mike Pyro."   After Scott's arrest, HALSEY routinely spoke with Scott while he was in jail and visited him.   On February 27, 2014, HSI and CPD detectives located and arrested HALSEY while she was visiting Scott at the Western Tidewater Regional Jail. HALSEY was verbally administered her Miranda Warnings and then interviewed regarding her activity with Mike Pyro.

During the interview, HALSEY stated she was contacted by a woman on Facebook who told her that she could make some money modeling and hosting hotel parties and provided HALSEY with an e-mail address to contact Mike Pyro.   HALSEY stated she made contact with Mike Pyro and eventually agreed to host a sex party at the request of Mike Pyro at a local hotel. HALSEY stated she hosted numerous parties and each time only one male, Scott, showed up at the party and they engaged in sex.   HALSEY stated the next day after the parties, instead of being paid by Mike Pyro, she was told she did not do the party the right way and he was not going to pay.

HALSEY stated that she made and sent the sexually explicit videos of John Doe 1 and John Doe 2 at the request of Scott and for the promise of money.   She never received any money. Scott also asked that John Doe 2 be brought to one of the parties and that she was to receive $150,000.   HALSEY brought John Doe 2 to the hotel and made a video, but never received any money.

HALSEY stated that after she made the videos for the promise of money, Mike Pyro still wanted her to do more parties.   She refused to do any more parties because Scott did not want her to do them.   Mike Pyro also tried to threaten her with releasing the videos to the public if she did

6

not do more parties or videos.   HALSEY did not do any additional videos after April 2014 despite

the threats.   At the time of her arrest, HALSEY did not know that Mike Pyro was the same person

as Robert Harold Scott, Jr.

 After Scott was arrested, he surreptitiously instructed SIERRA DANYELLE HALSEY to

delete the contents of the two e-mail accounts, including pyro75747@gmail.com that "Mike Pyro"

used to communicate with the women.   Scott also instructed HALSEY to delete her own e-mail

account, reset her cell phone to delete the contents, delete the contents of free text applications and

to delete a Facebook account that Scott used in his schemes.   Using the instructions and

passwords that Scott provided, HALSEY complied and successfully deleted several of these

accounts.

## II.   STANDARDS GOVERNING SENTENCING

 In three recent opinions, the Supreme Court pronounced a new sentencing regime.   In

*United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing

Guidelines purely advisory, but emphasized that a sentencing court must consider both the

Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.   *Id.* at 264.

The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 128 S. Ct. 558 (2007),

emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several

courts must consider in determining an appropriate sentence."   *Id.* at 564.   Finally, in *Gall v.

United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court

should calculate the Sentencing Guideline range, permit the government and the defendant "an

opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a)

factors, and finally pronounce a sentence taking into account all of the relevant factors.   *Id.* at

596-97.   The *Gall* Court further instructed that, in the event that the sentencing court decides to

7

impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."   *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence."   *United States v. Simmons*, 269 Fed. App'x 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### III.   FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider the nature and circumstances of the offense as well as the history and characteristics of the defendant. The Court should impose a sentence that reflects the seriousness of the offense, and the need to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes, and to provide the defendant with adequate rehabilitation or medical treatment.

### A.   Nature and Circumstances of the Offense

Producing child pornography is abhorrent.   To make matters worse, HALSEY then tried to destroy evidence of the crime.   HALSEY took advantage of the trust instilled in her by the parents of John Doe 1, who was 5 years old, and John Doe 2, who was 1 year old, and perverted this trust for her own potential financial gain.   While there is no evidence that HALSEY or Scott distributed the images beyond each other, the abuse of these children has been memorialized in images.   And, as the Court is well aware, these images are haunting.   The 5 year old is running

around and being a typical 5 year old, while HALSEY, at Scott's behest and for the promise of some absurd amount of money, attempts to get the 5 year old to comply with her heinous commands.   The 1 year old has a pacifier in his mouth during some of the abuse.   HALSEY also allowed Scott to participate in the abuse as well by bringing John Doe 2 to the hotel.   There is little worse that can be imagined than the facts underlying HALSEY's convictions.

Hopefully, the 1 year old will grow up none-the-wiser that this abuse ever occurred. However, the 5 year old will most likely have to deal with the trauma for the rest of his life.   And, the families of these victims are aware of what happened and have been victimized themselves with HALSEY's betrayal of trust and abuse of their children.   Many families and lives have been forever changed because HALSEY wanted to make quick money at others' expense.

While HALSEY was by no means the mastermind behind this scheme and this was not her original idea, HALSEY is the one that had the access to the children.   HALSEY is the one who agreed to the suggestions for no other reason except personal monetary gain from a stranger, Mike Pyro, who she had never even met.   HALSEY's reprehensible actions support the requested sentence of 216 months.

### B.   Defendant's Criminal History

The defendant has no criminal history.   However, the government points to the fact that HALSEY sexually abused two different minors on several different occasions.   This was not a one time thing, which should be considered by the Court for purposes of sentencing.

### C.      Need to Deter Future Criminal Conduct and to Protect the Public

Defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public.   While the government does not necessarily believe that HALSEY has a sexual interest in minors, clearly HALSEY is a danger to

minors.   She agreed to and sexually abused two different minors for money.   While HALSEY

has accepted responsibility for her actions in a legal sense, the Court has heard her speak about

her crimes and she is very matter of fact about the entire sexual abuse of the minors.   Perhaps

this is simply her outward portrayal, but the government perceives it as callousness and is

concerned that HALSEY does not understand the wrongness of her actions.   The government

avers that the likelihood that HALSEY may try to make money the "easy" way again and by

using others is strong due to this callousness.   Due to this risk, adequate punishment, deterrence

and protection of the public all call for a severe sentence for HALSEY's offenses.   18 U.S.C. §

3553(a)(2).

     **D.   Need to Provide Treatment to Defendant**

     Due to the nature and duration of the defendant's crimes, defendant should be ordered to

participate in a sex offender treatment program while incarcerated.

     **E.   Need to Avoid Unwarranted Sentencing Disparities**

     SIERRA DANYELLE HALSEY's actions related to the crimes of conviction and other

relevant conduct support a sentence of imprisonment of at least 216 months.   HALSEY is the first

to be sentenced of the women who were involved in the Scott conspiracies.   However, the

government believes that of all five of the women involved, HALSEY is by far the most culpable

and her activities the worst (besides Scott, of course).   She had two different victims and sexually

abused them on multiple occasions.   Then, HALSEY attempted to help Scott destroy evidence of

the crimes involving the children.   The severe sentence requested by the government would place

the defendant in the same position as many defendants charged with the same or similar child

pornography offenses.

**IV. CONCLUSION**

The government agrees that the PSR's Guidelines calculations are correct.    For the reasons stated above, the government asks the Court to impose a sentence of imprisonment of at least 216 months' imprisonment and lifetime supervised release.

Dana J. Boente
UNITED STATES ATTORNEY

By: _____/s/_____

Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number:   757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 11, 2014, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

John C. Gardner, Esquire
2106 Thoroughgood Road
Virginia Beach, VA 23455

I further certify that on August 11, 2014, I caused a true and correct copy of the foregoing

to be mailed to the following:

Kristie Milby
U.S. Probation Officer
827 Diligence Drive, Suite 210
Newport News, Virginia 23606

_____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
Email: elizabeth.yusi@usdoj.gov

12